### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| NRRM, LLC d/b/a CARSHIELD; <br><br> Plaintiff, <br><br> v. <br><br> OMEGA VEHICLE SERVICES, LLC d/b/a DELTA AUTO PROTECT; <br><br> Defendant. | Case No.:  4:18-cv-01898 <br><br> **JURY TRIAL DEMANDED** |

### COMPLAINT FOR TRADEMARK INFRINGEMENT, FALSE ADVERTISING, AND UNFAIR COMPETITION

Plaintiff NRRM, LLC d/b/a CarShield ("NRRM") states the following for its Complaint against Defendant Omega Vehicle Services, LLC d/b/a Delta Auto Protect ("Defendant" or "Delta"):

### NATURE OF THE ACTION

1.  This is a civil action for federal and state trademark infringement, false advertising, and unfair competition.

2.  NRRM and Defendant are in the business of marketing and selling vehicle service contracts, which provide coverage for certain mechanical breakdowns and servicing for automobiles.

3.  NRRM markets and sells vehicle services contracts using the marks CARSHIELD and CARSHIELD.COM, and it has federal registrations for and common law rights in those marks.  NRRM has expended considerable resources in building the CARSHIELD brand in the vehicle service contract market.

4. After NRRM adopted its CARSHIELD brand, Delta began using "Carshield" in headings in its advertisements on Internet search engines, including Google.

5. These advertisements infringe on NRRM's trademarks in the vehicle service contract industry, are likely to confuse consumers, and has resulted in damages to NRRM and diminished its goodwill and reputation.

6. Further, Defendant refers to its vehicle service contracts in these advertisements as "extended auto warranty," "number 1 auto warranty," "dealer approved," and so on. Likewise, Defendant's website, DeltaAutoProtect.com, describes its vehicle service contracts as "extended auto warranties," "the right extended auto warranty for your car," "comprehensive extended service programs," and so on.

7. Defendant's use of language such as "extended" and "warranty" to refer to vehicle service contracts violates various state and FTC regulations.

8. NRRM brings this action for federal trademark infringement, false advertising, and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and trademark infringement and unfair competition under Missouri statutory and common law.  NRRM seeks a permanent injunction against Defendant's use of SHIELD together with CAR and any other designation confusingly similar to NRRM's trademarks.  NRRM also seeks an injunction against Defendant's use of "extended," "warranty," and similar language regarding Defendant's vehicle service contracts.  NRRM further seeks monetary damages, an accounting of Defendant's profits gained from such use, NRRM's attorneys' fees and costs, and punitive damages.

## PARTIES

9. Plaintiff NRRM, LLC d/b/a CarShield is a Missouri limited liability company with its principal place of business in St. Charles County, Missouri.

10. NRRM is in the business of marketing vehicle service contracts in the state of Missouri.

11. Defendant Omega Vehicle Services, LLC d/b/a Delta Auto Protect is a Pennsylvania limited liability company with its principal place of business at 1800 John F. Kennedy Blvd., Suite 300, Philadelphia, PA 19103.

12. Upon information and belief, Defendant is in the business of selling and/or marketing vehicle service contracts, and is a direct competitor of NRRM.

## JURISDICTION AND VENUE

13. This action arises under 15 U.S.C. §§ 1114 and 1125(a), as well as the statutory and common law of the state of Missouri.  This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

14. This Court has personal jurisdiction over Defendant.  Defendant promotes, offers for sale, and sells products and services in this District using marks and phrases that infringe NRRM's trademarks.  Additionally, Defendant owns and/or operates an interactive website accessible in the State of Missouri.  Defendant purposefully directed its conduct toward the State of Missouri by, for example, intentionally infringing the trademarks of a resident of the state. Further, Defendant's acts constitute the commission of a tort within the State of Missouri that impacts or affects residents of the State of Missouri.

15. Venue is proper in this District under 28 U.S.C. § 1391 because, among other things, on information and belief, Defendant has sold and/or marketed products and services to residents in this District, has committed tortious acts within this District, and a substantial part of the events giving rise to these claims occurred and continues to occur in this District.

## FACTS COMMON TO ALL CLAIMS

### A. NRRM's Trademark Rights

16. NRRM markets and sells vehicle services contracts. It operates under the mark CARSHIELD.

17. NRRM is the owner of a federal trademark registration, No. 5,133,928, issued by the USPTO on January 31, 2017, for the standard character mark CARSHIELD for "[v]ehicle service contracts on vehicles manufactured by others for mechanical breakdown and servicing." *See* Exhibit 1.

18. NRRM is the owner of a federal trademark registration, No. 5,092,752, issued by the United States Patent and Trademark Office ("USPTO") on November 29, 2016, for the standard character mark CARSHIELD.COM for "[v]ehicle service contracts on vehicles manufactured by others for mechanical breakdown and servicing." *See* Exhibit 2.

19. These registrations and NRRM's common law rights to use CARSHIELD and CARSHIELD.COM in connection with selling vehicle service contracts constitute and shall be referred to collectively as the "CARSHIELD Marks" or the "Marks."

20. NRRM has continuously used various CARSHIELD Marks in commerce to market vehicle service contracts since at least as early as April 2016.

21. NRRM has devoted substantial resources to the marketing, advertising, and promotion of the CARSHIELD Marks in connection with selling vehicle services contracts.

22. NRRM owns and maintains a website at www.carshield.com that displays the CARSHIELD Marks, where customers can receive quotes for vehicle services contracts.

23. NRRM also uses the CARSHIELD Marks in print, television, and radio advertisements to market vehicle service contracts.

24. As a result of NRRM's continuous use of the CARSHIELD Marks in connection with its advertising, promotion, distribution, and sale of vehicle service contracts, the relevant consuming public has come to recognize the CARSHIELD Marks as originating from and used by NRRM, and to associate and identify the services offered and sold under the CARSHIELD Marks exclusively with NRRM.  NRRM derives invaluable goodwill from this recognition, association, and identification by the consuming public and the trade.

**B.     Delta's Infringing Use**

25. Periodically since at least August 2018, Delta has advertised on Internet search engines such as Google using phrases such as "Carshield" in the headings.  *See* Exhibit 3; Exhibit 4.

26. The vehicle service contracts sold and/or marketed by Delta directly compete with those marketed by NRRM under the CARSHIELD Marks, and the contracts are sold through overlapping channels of trade, such as through print advertisements and online.

27. Defendant's use of CARSHIELD is confusingly similar—in fact, identical—to the CARSHIELD Marks, and likely to cause confusion amongst consumers as to the source of the vehicle services contracts advertised and sold.

28.    Defendant knowingly, willfully, intentionally, and maliciously made use of CARSHIELD in its advertisements to exploit the commercial value of the CARSHIELD Marks and falsely suggest that Defendant's vehicle service contracts are NRRM's, or that the contracts originate from, are sponsored by, or are endorsed by NRRM.

29.    Defendant's use of NRRM's mark has directly harmed NRRM's business by diverting vehicle service contract sales away from NRRM, resulting in a loss of revenue by NRRM and improper profits to Defendant.

30.    Defendant's actions have harmed NRRM's reputation and goodwill associated with the CARSHIELD Marks, and result in additional injury that cannot entirely be quantified or captured.

**C.    Delta Advertises Its Vehicle Service Contracts as Warranties**

31.    Delta's advertisements and website use terms such as "extended" and "warranty" to refer to its vehicle service contracts.

32.    For example, Delta's advertisements claim to offer "Number 1 Auto Warranty," #1 Extended Auto Warranty," and claim to be "Dealer Approved."  *See* Exhibits 3 through 8.

33.    Likewise, Delta's website claims that vehicle service contracts *are* extended warranties.  For example, on its "What's Covered" page, it states that an "Extended Service Program" is "commonly referred to as an extended auto warranty."  Exhibit 9.  It also claims to offer "the right extended auto warranty for your car."  *Id.*

34.    Likewise, in a page titled "Extended Service Program" and subtitled "The difference between an Automobile Warranty and an Extended Auto Warranty / Extended Service Program," Delta confuses the difference between warranties and the vehicle service contracts it

is marketing.  *See* Exhibit 10.  For example, it explains that an "extended automobile warranty" is "[s]ometimes referred to as a service contract, or extended service program."  *Id.* at 1.

35. Generally, throughout its website, Delta markets its vehicle service contracts as "auto warranties" and "extended auto warranties."  *See, e.g.*, Exhibits 9 through 14.

36. Delta uses these terms despite the fact that it is not an automobile manufacturer or seller and is thus unable to offer "warranties" as defined by federal law under the Magnuson-Moss Warranty Act.  *See* 15 U.S.C. § 2301.

37. As evidenced by a minimal disclaimer at the bottom of its website, Delta is aware that it is not offering "warranties" as defined by the FTC, but even in that disclaimer, states that "[a] vehicle service contract (VSC) is often referred to as an 'extended auto warranty' [or] 'used car warranty.'"  *See* Exhibits 9, 12, 13, 14 at 5; Exhibit 10, 11 at 3.

38. Indeed, Delta admits in that disclaimer that it "uses the terms 'Warranty,' 'Extended Warranty,' 'Program,' and 'Extended Service Program,' with 'Vehicle Service Contract' and 'Extended Service Contract' for *marketing purposes only*," even though marketing is the target of the FTC and state regulations regarding vehicle service contracts.  *See* Exhibits 9, 12, 13, 14 at 5 (emphasis added); Exhibit 10, 11 at 3 (emphasis added).

## COUNT ONE
### Federal Trademark Infringement
### (Lanham Act Section 32 (15 U.S.C. § 1114))

39. NRRM restates the preceding paragraphs as if fully incorporated herein.

40. NRRM owns all rights, title, and interest in and to the CARSHIELD Marks, including the federal registrations.

41. Defendant's use of CARSHIELD has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendant's vehicle service contracts originate from NRRM, are associated or connected with NRRM, or have the sponsorship, endorsement, or approval of NRRM.

42. Defendant has used marks confusingly similar to NRRM's federally registered marks in violation of 15 U.S.C. §1114, and Defendant's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception for members of the trade and public and, additionally, injury to NRRM's goodwill and reputation as symbolized by the federally registered CARSHIELD Marks, for which NRRM has no completely adequate remedy at law.

43. Defendant's actions have been with intentional, willful, and malicious intent to trade on the goodwill associated with NRRM's federally registered CARSHIELD Marks, to NRRM's great and irreparable injury.

44. Defendant has caused and is likely to continue to cause substantial injury to the public and to NRRM, and NRRM is entitled to injunctive relief and to recover Defendant's profits, trebled profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## COUNT TWO
### Federal False Advertising
### (Lanham Act Section 43(a) (15 U.S.C. § 1125(a))

45. NRRM restates the preceding paragraphs as if fully incorporated herein.

46. Delta's use of phrases such as "warranty," "extended warranty," "extended automobile warranty," "auto warranty," "extended car warranty," "bumper to bumper warranty,"

and "extended automotive warranty" gives the false impression that Delta markets "warranties" for automobiles.

47. Delta's advertisements and statements on its website are false, inaccurate, and misleading in material respect and has or will cause injury to the general public.

48. Delta's conduct, as set forth above, constitutes false advertising under the Lanham Act, 15 U.S.C. § 1125.

49. Delta's false advertising, combined with its trademark infringement, has also caused injury to NRRM by associating the vehicle service contracts marketed by NRRM under the CARSHIELD Marks with "warranties," in violation of federal statute and FTC regulations.

50. Delta purchases CAR SHIELD, CARSHIELD, CARSHIELD.COM, or other confusingly similar marks to the CARSHIELD Marks as keywords for advertising on Internet search engines such as Google.

51. This keyword bidding exacerbates the damage caused to NRRM by Delta's false advertising.

### COUNT THREE
### Federal Unfair Competition/Trademark Infringement
### (Lanham Act Section 43(a) (15 U.S.C. § 1125(a)))

52. NRRM restates the preceding paragraphs as if fully incorporated herein.

53. NRRM owns all rights, title, and interest in and to the CARSHIELD Marks.

54. Defendant's use of SHIELD together with CAR described above has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Delta's vehicle service contracts originate from NRRM, are associated or connected with NRRM, or have the sponsorship, endorsement, or approval of NRRM.

55. Defendant's use of terms such as "warranties" and "extended" in violation of various state and FTC regulations, creates unfair competition in relation to NRRM, particularly given Defendant's purchase of CAR SHIELD, CARSHIELD, CARSHIELD.COM, or other confusingly similar marks to the CARSHIELD Marks as keywords for advertising on Internet search engines.

56. Defendant has made false representations, false descriptions, and false designations of origin of its services, and has infringed common law rights in the CARSHIELD Marks, in violation of 15 U.S.C. § 1125(a), and Defendant's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to NRRM's goodwill and reputation as symbolized by the federally registered CARSHIELD Marks, for which NRRM has no completely adequate remedy at law.

57. Defendant's actions have been with intentional, willful, and malicious intent to trade on the goodwill associated with NRRM's federally registered CARSHIELD Marks, to NRRM's great and irreparable injury.

58. Defendant has caused and is likely to continue to cause substantial injury to the public and to NRRM, and NRRM is entitled to injunctive relief and to recover Defendant's profits, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

**COUNT FOUR**
**State Trademark Infringement and Unfair Competition**
**(Mo. Rev. Stat. §§ 417.005-417.066 and Missouri Common Law)**

59. NRRM restates the preceding paragraphs as if fully incorporated herein.

60. NRRM owns all rights, title, and interest in and to the CARSHIELD Marks, including all common-law rights and rights pursuant to Mo. Rev. Stat. § 417.005 *et seq*.

61. Defendant's use of SHIELD together with CAR described above is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendant's vehicle service contracts originate from, are associated with, are connected with, or have the sponsorship, endorsement, or approval of NRRM.

62. Defendant's use of terms such as "warranties" and "extended" in violation of various state and FTC regulations, creates unfair competition in relation to NRRM, particularly given Defendant's purchase of CAR SHIELD, CARSHIELD, CARSHIELD.COM, or other confusingly similar marks to the CARSHIELD Marks as keywords for advertising on Internet search engines.

63. Defendant has caused substantial injury to the public and to NRRM, and NRRM is entitled to injunctive relief and to recover Defendant's profits, costs, and reasonable attorneys' fees.

64. Defendant's wrongful conduct has been willful and deliberate or recklessly indifferent to the rights of NRRM, warranting an award of punitive damages under Missouri common law.

65. Defendant's use of the Marks and confusingly similar marks, terms, and phrases infringes and dilutes the Marks, entitling NRRM to injunctive relief pursuant to Mo. Rev. Stat. §§ 417.061 and 417.066.

## CONCLUSION

WHEREFORE, NRRM prays the Court enter judgment in its favor and award NRRM relief as follows:

1. That the Court permanently restrain and enjoin Defendant and its agents from any and all further use of SHIELD together with CAR or any other marks confusingly similar to the CARSHIELD Marks;

2. That the Court permanently restrain and enjoin Defendant and its agents from any other act likely to induce the belief that any of Defendant's business, vehicle service contracts, services, or commercial activities are in any way legitimately connected with, sponsored by, or approved by NRRM;

3. That the Court permanently restrain and enjoin Defendant and its agents from using the terms "extended," "warranty," or any similar phrase in connection with vehicle service contracts on any marketing, advertising, or promotional activities, including its website;

4. That NRRM be awarded all damages incurred as a direct and proximate cause of Defendant's unlawful conduct;

5. That NRRM recover from Defendant all amounts, including profits, received by Defendant as a direct and proximate cause of Defendant's unlawful conduct;

6. That NRRM recover from Defendant treble, exemplary, and punitive damages, based on its willfulness and/or reckless indifference to NRRM's trademark rights, available under the Lanham Act and Missouri law;

7. That Defendant pay NRRM's reasonable attorneys' fees, based on its willful and deliberate conduct in this exceptional case pursuant to 15 U.S.C. § 1117(a);

8. That NRRM be awarded prejudgment interest;

9. That NRRM be awarded post-judgment interest;

10. That the Court grant NRRM such other and further relief as the Court may deem just and proper.

## JURY DEMAND

NRRM hereby demands a jury trial on all issues so triable.

Dated:  November 2, 2018                Respectfully Submitted,

By: *s/Jeffrey H. Kass*
Jeffrey H. Kass, Bar. No. 46800
LEWIS BRISBOIS BISGAARD & SMITH LLP
1700 Lincoln Street, Suite 4000
Denver, Colorado 80203
Tel.:   303-861-7760
Fax:   303-861-7767
Jeffrey.Kass@lewisbrisbois.com

*Attorneys for Plaintiff*